## George H. Flanagan, Appellee, v. Chicago City Railway Company, Appellant.

### Gen. No. 14,190.

1. INSTRUCTIONS—*when refusal to give, not error.* It is not error to refuse a correct instruction the substance of which is contained in another given.

2. NEGLIGENCE—*when motorman guilty of.* Held, under the evidence in this case that the jury were justified in finding that the motorman in charge of the car which came into collision with the plaintiff's wagon was guilty of negligence.

3. VERDICT—*when not excessive.* A verdict for $5000 in an action for personal injuries held not excessive where it appeared that the plaintiff at the time of his injury was 29 years of age, was strong and well and was then earning $15 per week, and that from the time of such injury to the trial, four years later, he had been unable to do but very little work, had earned only $200, had lost 20 pounds in weight, and had suffered as a result of the accident an injury to his spine, etc.

Action in case for personal injuries. Appeal from the Circuit Court of Cook county; the Hon. RICHARD S. TUTHILL, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1907. Affirmed. Opinion filed December 4, 1908.

**Statement by the Court.** This is an appeal by the defendant from a judgment for $5,000 for personal injuries alleged by the plaintiff to have been sustained by him through the negligence of the defendant. Defendant operated a double-track electric street railway in Forty-seventh street, and plaintiff was the driver of a baker's wagon. A west-bound car of defendant, running in the north track, in Forty-seventh street, between half past three and four o'clock in the morning of April 26, 1903, struck the wagon which plaintiff was driving, and in such collision the plaintiff sustained the injuries complained of.

CALHOUN, LYFORD & SHEEAN, for appellant; W. J. HYNES, of counsel.

BULKLEY, GRAY & MORE, for appellee.

MR. JUSTICE BAKER delivered the opinion of the court.

The defendant put in evidence an ordinance making it unlawful for the driver of a wagon to use the streets after 8 P. M., "without having displayed" one or more lights or lanterns. Plaintiff testified that he had a light on his wagon, and the motorman that he saw no light on the wagon.

The court refused to give for the defendant the following instruction:

"B. The court further instructs the jury as a matter of law, that under the ordinance of the City of Chicago which is in evidence in this case, it was negligence as matter of law for the plaintiff to drive upon 47th street at the time and place in question without having displayed upon his wagon one or more lights or lanterns. If, therefore, you believe from the evidence that the plaintiff, at the time and place in question, did not have displayed one or more lights or lanterns upon his wagon, and if you further believe from the evidence that such failure, if any, on the part of the plaintiff contributed in any degree to bring about the collision in question, it is your duty to find the defendant not guilty."

The instruction assumes that plaintiff had no light displayed on his wagon, and for that reason it was not error to refuse it. Whether plaintiff had a light displayed on his wagon was, we think, on the evidence a question of fact for the jury which must be regarded as settled by the verdict.

The substance of refused instruction D was given in defendant's instruction 8, and the defendant therefore was not prejudiced by the refusal to give instruction D.

The court also refused to give for the defendant the following instruction:

"G. The court further instructs the jury that it is not every accident that makes a street railway company liable for damages to the person injured. If an accident is unavoidable, then no liability is incurred;

and if the jury believe from the evidence in this case that so far as the street railway company is concerned the collision proved was unavoidable, then the plaintiff cannot recover, and the jury should find the defendant not guilty''.

If, ''so far as the defendant was concerned the accident was unavoidable'', then the defendant was not guilty of negligence. The court, in instruction 11, given for the defendant, told the jury that the burden of proving that the defendant was guilty of negligence was on the plaintiff and if, ''by said rule he has failed to establish his case, it is the duty of the jury to find the defendant not guilty''. We do not think that the judgment should be reversed because of the refusal to give said instruction.

Appellant insists that the evidence fails to prove, either that the defendant was guilty of negligence, or that the plaintiff was in the exercise of reasonable care for his own safety, and that the verdict is therefore against the evidence. One of the acts of negligence averred in the declaration, was that the defendant failed to have a headlight at the front end of the car. Plaintiff and two witnesses called by him testified that soon after the collision the motorman took a headlight from the rear end of the car in question and placed it at the front end. Heise, a passenger on the car, called by the defendant, testified that soon after the collision he found a broken headlight lantern under the front end of the car; that he saw the motorman take a headlight from the rear end of the car and place it at the front end. The conductor and the motorman, also called by the defendant, testified that as was the custom on that run, there was a headlight at each end of the car; that in the collision the front headlight lantern was broken; that the motorman then took the headlight which was at the rear end of the car and placed it at the front end. The testimony of the conductor and motorman does not conflict with the testimony of the plaintiff and his witnesses. The

conductor and motorman state additional facts, viz.: that before the collision there was a headlight at each end of the car; that the front headlight was broken in the collision and the rear headlight was then put in its place. Heise's testimony tends to corroborate the testimony of the conductor and motorman. There is nothing in the testimony of plaintiff's witnesses, that tends to contradict the testimony of the conductor and motorman as to the additional facts stated by them. Their testimony, that before the collision there was a headlight at each end of the car, is uncontradicted either by positive testimony, or by circumstances, is not inherently improbable, and the jury could not properly reject it. Larson v. Glos, 235 Ill. 584.

We think that the jury could not, from the evidence, properly infer or conclude that at the time of the collision there was no headlight at the front end of the car.

Other counts of the declaration aver that the defendant so negligently ran, managed and operated its said car that it struck plaintiff's wagon, etc. Plaintiff testified that when he made his last stop before the collision, his wagon was on the south side of Forty-seventh street, south of the south track and about seventy feet west of Wallace street, headed west; that his next stop was to be on the north side of that street some distance farther west; that as he got into his wagon he looked both east and west and saw nothing in the street; that he did not look again to the east before the collision; that he started to drive across the street diagonally, northwesterly, and drove in that direction until his horse was across the north track, his wagon on that track, when it was struck by the car; that he had gone sixty feet west, and nearly across the street diagonally, before the collision occurred; that his horse was walking; that the street was forty-two feet wide; that it was thirteen feet from the curb to the south rail of the south track, about five

feet between rails and about that distance between the tracks.

The motorman testified that when he first saw the wagon it was thirty-five or forty feet away, going west in the south track; that he then sounded his gong; that when the car was fifteen or twenty feet from the wagon, the horse turned to the north; that he then applied his brakes and was unable to stop in time to avoid striking the wagon; that the speed of the car was about twelve miles per hour; that at that speed he could stop his car in forty or fifty feet.

But one car ran in said street at that hour of the night, and it made two trips per hour. Plaintiff testified that he had seen a car pass by about that time of the night, but did not know at what time it passed. Whether plaintiff drove northwesterly, diagonally across the street from the time he started, as he testified, or drove some distance west in the south track and then turned to the north, as the motorman testified, was a question for the jury. Plaintiff looked both east and west just before starting, and saw nothing in the street. Whether under the circumstances shown by the evidence, he was guilty of contributory negligence in driving on to the north track, without again looking to the east, was, we think, a question for the jury on which their finding should not be disturbed.

The collision occurred in the night. No witness testified as to the distance at which a wagon could be seen at that time. The motorman testified that when he saw the wagon, it was thirty-five or forty feet away. If the night was so dark that he could not see a wagon until it was within thirty-five or forty feet and, at the rate he was going, his car could not be stopped in less than forty or fifty feet, from such facts the inference might be drawn that the rate of speed was so high as to be dangerous. Chicago City Ry. Co. v. Bennett, 214 Ill. 26.

From the evidence, as has been said, the jury might properly find that the wagon at no time went west in

the south track, but from the time it started until the collision, went northwesterly, diagonally across the street. The motorman, according to his testimony, did not apply his brakes when he first saw the wagon, but rang his gong and went forward twenty feet before he applied his brakes. The motorman's testimony as to the distance his car was from the wagon, when he first saw the wagon, and the distance his car ran after he saw the wagon before he made an effort to stop the car, were necessarily only estimates of such distances. He estimated the distance between the car and wagon at about forty feet, "thirty-five to forty feet", and testified that he could stop his car in forty to fifty feet.

We cannot say that on the evidence in this record, the jury might not properly find that the defendant negligently ran and operated said car, and that by such negligence plaintiff was injured.

The trial took place in May, 1907, four years after plaintiff was injured. He was, when injured, twenty-nine years old, was strong and well and was then earning $15 per week. He testified that from the time of his injury to the trial, he had been able to do very little, had earned only $200, and lost twenty pounds in weight; that in December, 1906, he went to work for Siegel, Cooper and Co., and worked there until three weeks before the trial; that he was compelled to give up that position on account of his condition.

A physician who treated plaintiff for about two months after his injury, testified that his symptoms indicated an injury to the spine; that in his opinion the effect of such injury would incapacitate him to a great extent from performing manual labor, by weakening his spine. Another physician who examined plaintiff in June, 1903, and again just before the trial, testified that in his opinion the effect of plaintiff's injuries was to diminish his ability to follow the ordinary vocations of life; and that he was then able to do manual labor only to a limited extent.

We do not think on the evidence the damages awarded plaintiff can be held excessive. We think that the record is free from error, and the judgment of the Circuit Court will be affirmed.

*Affirmed.*